Richard S. Heller, J.
This claim seeks recovery for damages by reason of the appropriation of three parcels of land. The appropriations were for highway purposes.
Parcels 110 and 111 shown on Map No. 89 were acquired by deed to claimant Ben Barcus dated May 10, 1929. The property, of which Parcel No. 110 was a part, was bounded on the north by the south line of East Water Street in the city of Elmira, on the west by the east line of the Delaware, Lackawanna & Western Railroad Company (D. L. & W. R. R. Co.) right of way, on the east by a railroad siding running northerly *99 from the D. L. & W. R. R. Co. right of way and on the south by property previously conveyed by claimants’ grantor. Parcel No. 110 had a stream known as Newtown Creek running through the westerly portion and a small triangle at the northwest corner of Parcel 110 was on the west side of Newtown Creek. Parcel No. 110 contained about 604 acres.
Parcel No. 111 lay north from the intersection of the easterly line of the D. L. & W. R. R. Co. right of way and the siding running northerly from that right of way. Parcel No. 111 was bounded on the west by the D. L. & W. R. R. Co. right of way, on the north by property previously conveyed by claimants’ grantor and on the east by. the railroad siding. It contained about .078 acres.
The deed to claimant included a right to use the railroad siding for both parcels in common with others. On the evidence in the record, this railroad siding was the only legal right of access to Parcel No. 111 that claimant ever owned.
After claimants’ acquisition, a viaduct was constructed on East Water Street and for that purpose some of the property conveyed to the claimant by deed dated May 10, 1929, was appropriated and at that time, claimant received compensation for the value of the land taken and also for loss of access from East Water Street. On the evidence in the record, following this appropriation, claimants’ only legal right of access to Parcel 110 was by means of the railroad siding.
The only use made of this property by the claimant from its acquisition in 1929 to the appropriation was for the storage of lumber at some indeterminate time or times. The ground level was very low and Newtown Creek actually ran through the westerly portion of Parcel No. 110.
By a deed dated December 12, 1929 claimant acquired property which included the southerly part of Parcel 122 shown on Map No. 89. The property so acquired by claimant was bounded on the west by the east line of the D. L. & W. R. R. Co., on the north by John Street in the city of Elmira, on the east by Newtown Creek and on the south by East Water Street. The testimony indicates that following the construction of the viaduct on East Water Street, claimants’ only legal access to this property was by means of John Street.
By deed dated August 10,1937 claimant Ben Barcus obtained property bounded on the south by John Street, on the west by the D. L. & W. R. R. Co. right of way, on the north by land owned by one Taylor and others and on the east by land owned by Taylor and by Newtown Creek. By deed dated August 26, *100 1937 claimant acquired a strip of land 76 feet by 16 feet running from the northeast corner of his land, easterly for 60 feet along the south line of land owned by Powell and easterly for 16 feet along land owned by Taylor. This deed also included a right of way 16 feet wide running north over Taylor’s property along the west line of that property to a point about 170 feet south of Church Street and then included a right to use an 8-foot right of way running north to Church Street, the use of which had been reserved by Taylor when he conveyed that property to one Wise by deed dated April 13, 1932. At the time of the reservation of that 8-foot right of way, Taylor did not own any property south of John Street between the D. L. & W. E. E. Co. right of way and Newtown Creek since that property had been conveyed to claimant by the deed dated December 12, 1929. The record does not indicate ownership of the property north of John Street acquired by claimant Barcus by deed dated August 10, 1937, at the time of the reservation of the 8-foot right of way by Taylor in his deed to Wise in 1932.
At about the time of the conveyance by Taylor to Barcus in 1937, the D. L. & W. R. R. Co. elevated its right of way and John Street was closed so that thereafter, claimants’ only access to all the property lying north of East Water Street and between the railroad right of way and Newtown Creek was by means of this 8-foot right of way over property owned by Wise and 16-foot right of way over property owned by Taylor.
Subsequently the State appropriated for flood protection purposes, certain property owned by Taylor. That property is shown on Map No. 351 at Parcel 553 and the file of the Chemung County Clerk’s office including that map, was made a part of the record by stipulation. The perpetual easement so appropriated ran along the entire south line of the property conveyed to Wise by Taylor for about 233.33 feet and extended southerly therefrom about 182 feet on the west and 155 feet on the east. It included a portion of Taylor’s property over which Taylor had granted claimant a 16-foot right of way running north to the Wise property. The appropriation reserved to the owner the right to use the property so long as such use did not interfere with the easement in the opinion of the Superintendent of Public Works.
The affidavit of service filed with the appropriation map recites service of the notice of appropriation with the maps on the claimant herein on March 18,1948. The notice of appropriation was addressed to the claimant as well as others.
*101 By deed dated April 8, 1949 Taylor conveyed to claimant property lying north and east of claimants’ property and including the property described as Parcel 553 on Map No. 351. With this conveyance, claimant owned about 12% acres running in a long narrow strip north from East Water Street lying between the D. L. & W. R. R. Co. right of way on the west and Newtown Creek on the east. The only means of access thereto was over an 8-foot right of way running south from Church Street and then over property subject to an easement of the State for flood protection purposes.
It is apparent that even if a right of way over the State’s easement did not interfere with that easement, there was a totally unresolved question as to the extent of claimants’ right to use the 8-foot right of way over land owned by Wise.
About April 25,1951 claimant Ben Barcus executed a general release to the State. He asserts that he did so at the request of Taylor for the sole purpose of permitting Taylor to receive payment for Parcel 553 shown on Map No. 351 and upon Taylor’s assertion and the assertion of a supposed representative of the State who was unknown as to name, position or authority, that the release did not affect any rights which claimant Barcus had. Barcus also testified that he was never served in connection with Parcel 553 shown on Map No. 351 but this testimony is directly contradictory to the affidavit of service attached to the notice of appropriation filed in the Chemung County Clerk’s office. Unquestionably, claimants received no compensation for the flood protection appropriation which effectively eliminated whatever right of access they previously had.
The credible evidence in the record however, establishes that the right to compensation for the loss of access by reason of the flood protection appropriation was lost as a result of claimants ’ lack of vigilance and the operation of the limitations of time provided for in section 10 of the Court of Claims Act. That flood protection appropriation occurred prior to the effective date of the amendment to section 10 extending the time for filing in appropriation cases to two years after personal service. Even under the amendment, claimants’ time to file expired two years after March 18, 1948.
So this claim involves Parcel 111 containing .078 acres to which claimant had legal access only by means of a railroad' siding from a railroad right of way and Parcel 110 containing about .604 acres to which claimant had legal access only by means of a railroad siding from a right of way and Parcel *102 122 to which claimant, regardless of the effect of the general release, had access only so long as such access did not interfere with a State easement and was within the permitted use of the right of way over land owned by another.
The property appropriated was all zoned for manufacturing use and the City of Elmira contained very little such property. Parcels 110 and 111 were located on a railroad siding with a right to use the siding and were adjacent to property used for such purposes as bulk storage. Parcel 122 ran along a railroad right of way but was considerably lower than the railroad elevation and apparently was subject to flooding. The only use made of any of the plot including Parcel 122 was as a source of loam for which claimant received 25 cents per yard.
There had been located on Parcel 122 a gas well which was leased by claimant on a royalty basis which had produced about $40 per month for some time previous to the destruction of the line by the State on April 27, 1954. The record is silent as to the precise location of that gas line but apparently the only possible area in which claimants had any claim of right to maintain that gas line was over the property subject to the flood protection easement and the 8-foot right of way over property owned by Wise. Claimant is not shown to have had any claim of an interest in real property for maintenance of that line at any other point abutting on his property. Apparently any interest in real property permitting the maintenance of that gas line ran to the lessee of the well or the gas line existed simply at the will of the person or persons over whose property it ran.
The record does not establish that this appropriation destroyed any existing right to access to that gas well owned by the claimants. The most that is established is that some gas pipe leading from the well located on property owned by claimants was destroyed by the State on about April 27, 1954. The oil and gas lease, in evidence as Exhibit 8, establishes that what was leased was a right to drill and maintain a well and to construct and maintain pipe lines and storage facilities but all machinery and fixtures including well casing and pipe lines remained the property of the lessee. The term of the lease which is dated May 26, 1949 and was thus subsequent to the flood protection appropriation was for 10 years or as long As gas was produced or operations for production continued. Eental was fixed at an amount equal to one eighth of the value of “ all gas saved and marketed from said premises.” The lease also contains a provision that the lessee, upon pay- *103 merit of all money due had a right to surrender the lease at any time and thereupon he discharged from any neglect or non-fulfillment of the contract.
It has not been shown that the appropriations involved here included any interest in the gas well or pipe line owned by the claimants. The most that can be concluded from the evidence is that the destruction by the State of property owned by the lessee of the gas well caused a termination of payments to the claimants in accordance with the provisions of the lease. Such payments might have ceased at any time at the will of the lessee regardless of any action by the State.
Personal service of the notice of appropriation of Parcels 110 and 111 was made on the claimants on March 24, 1955. Personal service of the notice of appropriation in regard to Parcel 122 was made on the claimants on June 22,1956. Taking into consideration all relevant factors affecting valuation and all items of damage resulting from the appropriation, the court finds that claimants have been damaged by these appropriations as follows:

Parcel Amount

110 ............................... $ 800
111 ............................... 175
122 ................................ 1,600
Claimants are entitled to judgment against the State of New York in the total amount of $2,575, with interest on the sum of $975 from February 24, 1955 to September 24, 1955 and from January 31, 1956 and interest on the sum of $1,600 from April 27, 1954, the date on which the State actually took possession of the property.
Descriptions of parcels are contained in the claim.
The claims have not been assigned.
The court has viewed the premises.
Let judgment be entered accordingly.